FILED'08 JUL 11 09:47 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID PAULSON,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CV. 07-257-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

Claimant David Paulson ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 401-33, 1381-83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C.

§ 405(g). Following a careful review of the record, the court concludes that the decision of the Commissioner is supported by substantial evidence, contains no errors of law, and should be affirmed.

*Procedural History*

Claimant filed his original claim for disability insurance benefits on September 20, 1996. Tr. 83. After this application was denied, initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ"), who also found Claimant not disabled in his July 30, 1998, opinion. Tr. 15. This decision became final on February 16, 2000, when the Appeals Council denied Claimant's request for review. Claimant appealed this decision in federal district court, and on December 22, 1999, Judge Ann Aiken remanded the claim for additional proceedings.

As a result of the remand, another hearing was held before an ALJ who again found Claimant not disabled on September 10, 2002. This decision was vacated by the ALJ on October 3, 2002, and the case was reassigned to ALJ Atkins. ALJ Atkins found Claimant not disabled on August 9, 2004. This decision became final on May 26, 2004. Claimant again appealed the decision in federal district court where, on March 13, 2006, Judge Michael Hogan again remanded the matter for further proceedings.

On remand, Judge Hogan directed the ALJ to reconsider the opinion of treating psychiatrist Jacobs and to "state adequate reasons to reject Dr. Jacobs's opinion, or to credit the opinion and include the limitations found by Dr. Jacobs in [Claimant's] [residual functional capacity ("RFC")], and in a hypothetical question to the vocational expert." Tr. 808. However, Judge Hogan also found that the ALJ: 1) properly relied on the opinion of Dr. Carvalho that Claimant could perform light work with restrictions; 2) properly rejected Claimant's testimony because Claimant's doctors

2

repeatedly commented that his complaints exceeded objective findings, and because Claimant gave inconsistent testimony about his limitations; 3) properly rejected the opinions of Drs. Anderson and Gritzka; 4) did not commit reversible error by addressing or separately discussing the opinions of Drs. Christensen, Green, and Kruger, and 5) properly determined that Claimant's condition was not equivalent to Listing 1.04B. In closing, Judge Hogan observed that, on remand, the ALJ was "free to reconsider any other determinations." *Id.* Claimant did not appeal Judge Hogan's decision.

As a result of this second remand, ALJ Jones reconsidered whether Claimant was disabled, without conducting an additional hearing. On September 28, 2006, ALJ Jones found Claimant not disabled. The Appeals Council again declined review on December 20, 2006, resulting in the ALJ's decision becoming the final decision of the Commissioner. Claimant again appealed in federal district court.

The scope of this court's third review of Claimant's case is narrowed by the scope of Judge Hogan's remand. As set out above, Judge Hogan directed the ALJ to specifically consider the opinion of Dr. Jacobs and determine whether that opinion should be credited, and, if so, to include in a hypothetical to the VE the limitations Dr. Jacobs identified. Although Judge Hogan gave the ALJ leave to reconsider any other determinations, Judge Hogan's remand order did not require a wholesale reconsideration of each of the ALJ's previous determinations. In fact, as noted, Judge Hogan upheld all of the ALJ's determinations except for the specific determination regarding Dr. Jacobs's opinion, and on that issue Judge Hogan did not direct the ALJ to reach a specific finding but only to review Dr. Jacobs's opinion to determine its effect, if any, on Claimant's RFC determination. Therefore, to the extent that the ALJ addressed issues beyond Dr. Jacobs's opinion, the court will consider them, but if the ALJ did not address an issue, the court will defer to Judge

Hogan's analysis and decision on that issue.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Andrews*, 53 F.3d at 1039-1040. The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).

*Summary of the ALJ's Findings*

ALJ Jones engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability, as required. *See* 20 C.F.R. § 416.920. First, at step one, ALJ Jones concluded

4

that Claimant had not engaged in any substantial gainful activity since the alleged onset date of his disability, November 30, 1997. Tr. 786. This is not disputed. At step two, ALJ Jones considered whether Plaintiff suffered from "a severe medically determinable physical or mental impairment." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). ALJ Jones found that "claimant has the following severe impairment: lumber degenerative disc disease status post 1983 laminectomy." Tr. 786 (citing 20 C.F.R. 404.1520(c)). ALJ Jones concluded, however, that there was no evidence that Claimant's alleged "depression and chronic pain syndrome," were severe impairments prior to the expiration of Claimant's insured status. Tr. 786.

At step three, ALJ Jones concluded that Claimant's impairments do not meet or equal the criteria in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404. *Id.* Although, according to ALJ Jones, Claimant acknowledged that the back disorder alone does not meet or equal Listing 1.04(B), as required by the regulations, Claimant argued that the combination of his back disorder and his depression and chronic pain syndrome taken together meet this listing. However, ALJ Jones held that "when the claimant's mild depression and some back pain are taken into consideration, [Claimant's] impairment does not equal Listing 1.04 or any of its subsections." Tr. 786. Therefore, at step three, Claimant was not disabled.

Next, at step four, ALJ Jones determined that Claimant had the RFC to perform "light work." Tr. 787. Light work is "defined as the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, to walk or stand 6 hours out of 8 hours, and to sit 2 hours out of 8 hours . . . ." *Id.* ALJ Jones detailed the following modifications: "[Claimant] needs to be able to alternate sitting and standing about every 30 minutes, to limit walking to 100 yards or up to 15 or 20 minutes at a single time, to avoid repeated stooping, bending, twisting and lifting, and is unable to climb scaffolds or

5

other types of equipment." Tr. 787.

Next, ALJ Jones addressed the primary focus of the remand, Dr. Jacobs's opinion of Claimant's work restrictions. ALJ Jones stated that "Dr. Jacob's [sic] opinion is not persuasive to the extent that he heavily relies upon [Claimant's] report of back symptoms . . . [and] is entitled to no greater evidentiary weight than [Claimant's] statements upon which his opinion is based." Tr. 787. ALJ Jones evaluated Claimant's general credibility and found Claimant's subjective complaints less than credible. ALJ Jones wrote, "[s]pecifically, there is a uniformity of medical opinion finding a significant disparity between the [Claimant's] subjective complaints and objective test or examination findings that cannot be ignored by the undersigned." Tr. 787. He cited three physicians, in particular, who reached this conclusion: Dr. Jacobs, an examining physician; Dr. Carvalho, an examining physician; and Dr. Weinstein, a treating physician. Tr. 787.

ALJ Jones contrasted the weight given the opinions of treating and examining doctors, with that of Dr. Gritzka, a non-treating and non-examining physician. ALJ Jones wrote that "[t]he non-examining and non-treating opinion of [Claimant's] restrictions and ability to work offered by Dr. Gritzka is certainly an insufficient reason to reject opinions of those physicians who actually treated or examined [Claimant] during the relevant period . . . ." Tr. 787-88. ALJ Jones also stated two other reasons for finding Claimant not credible. First, according to ALJ Jones, "[Claimant] has given various different factual versions" of the cause of his back injury. Tr. 788. Second, the ALJ found "the degree of [Claimant's] symptoms [was] less than credible given his activities of daily living." *Id.* For these reasons, ALJ Jones "[found] no reason to modify [Claimant's] [RFC] determination found in 2004 by [ALJ] Atkins." Tr. 788.

Next, ALJ Jones performed an analysis of Dr. Jacobs's opinion, as Judge Hogan had

6

specifically directed in the remand order. After referral by Claimant's treating physician for an "expert opinion on [Claimant's] back and leg condition," Dr. Jacobs concluded that "there [was] a discrepancy between [Claimant's] current level of function and the objective findings." Tr. 788. Although Dr. Jacobs wrote a letter opining that Claimant suffered from "debilitating back and bilateral lower extremity pain," ALJ Jones found Dr. Jacobs's treatment notes more persuasive. Tr. 306. According to ALJ Jones, Dr. Jacobs's report upon examining Claimant "reflect[ed] an essentially normal neurological examination, minimal scaring [sic] from his back surgery, and that [Claimant's] primary problem is muscular from being 'markedly deconditioned' and therefore the solution recommended by Dr. Jacobs was soft tissue injections." Tr. 788. ALJ Jones pointed out that Dr. Jacobs admittedly based his restriction on Claimant's subjective complaints, and these were inconsistent with the objective record. Tr. 789. Because ALJ Jones also found Claimant not credible, he rejected Dr. Jacobs's conclusions as to Claimant's work related restrictions. *Id.*

ALJ Jones then evaluated Dr. Gritzka's non-treating and non-examining opinion. Dr. Gritzka concluded that Claimant was "unable to do full time sedentary work." Tr. 789. ALJ Jones pointed out that, in district court, Judge Hogan upheld the prior ALJ's rejection of "Dr. Gritzka's unique opinion that [Claimant] is unable to work." *Id.* Accordingly, ALJ Jones observed, there was no reason to give greater credence to Dr. Gritzka's reinterpretation of the back test results, and ALJ Jones declined to do so. As a result, ALJ Jones affirmed the RFC previously articulated as accurately reflective of Claimant's work restrictions. *Id.*

Next, ALJ Jones determined that Claimant could not perform past relevant work. However, ALJ Jones determined that Claimant has transferable skills from prior skilled work, namely "dispatching, scheduling, estimating, inventorying, and supervising skills." *Id.* At this point, the

burden shifted to the Commissioner to demonstrate that Claimant was capable of adjusting to other work, in light of his RFC. The VE testified that, based on Claimant's RFC, there were "a significant number of jobs in the national and regional economies [that Claimant] was capable of performing at the time his insured status expired." Tr. 790. In particular, the VE identified "dispatcher/space scheduler," and "rental clerk," as jobs that Claimant is capable of performing. *Id.* ALJ Jones concluded that Claimant was not "under a 'disability,' as defined in the Social Security Act, from November 30, 1997 through December 31, 1997." Tr. 790.

*Discussion*

Claimant objects to ALJ Jones's findings on nine grounds: (1) ALJ Jones's finding that Claimant does not satisfy Listing 1.04(B) was based on improper legal standards; (2) ALJ Jones erred in relying on Dr. Carvalho's opinion; (3) ALJ Jones wrongly judged Claimant not credible and failed to provide specific and cogent reasons to reject Claimant's testimony; (4) ALJ Jones failed to consider Claimant's impairments in combination; (5) ALJ Jones ignored SSR 96-7p by failing to consider the psychological basis for Claimant's degree of pain, resulting in an improperly formulated RFC; (6) ALJ Jones ignored the 1994 examination performed by Mr. Christensen, a chiropractor; (7) ALJ Jones wrongly rejected the opinions of several physicians; (8) ALJ Jones failed to credit all applicable limitations and therefore presented the VE with a faulty hypothetical; and (9) ALJ Jones failed to apply the medical-vocational guidelines in a manner consistent with Claimant's eroded occupational base.

Because of the procedural posture of this case, the court declines Claimant's invitation to review, again, determinations made by ALJ Atkins and upheld by Disctric Judge Hogan. In his remand instructions, Judge Hogan wrote: "the ALJ is free to state adequate reasons to reject Dr.

Jacobs's opinion, or to credit the opinion and include the limitations found by Dr. Jacobs in [Claimant's] RFC, and in a hypothetical question to the vocational expert. The ALJ is free to reconsider any other determinations." Tr. 808. Although ALJ Jones was permitted to reconsider other determinations, he was not required to do so. Therefore, to the extent that ALJ Jones reinterpreted an element of Claimant's disability claim, the court will review his findings, but it will not review the findings of ALJ Atkins reviewed and upheld by Judge Hogan.[1]

1. Listing 1.04B

Claimant argues that ALJ Jones failed to adequately support his finding that Claimant did not meet or equal the requirements of Listing 1.04B, Disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, Section1.04. In particular, Claimant argues that the ALJ did not address the possibility that Claimant suffers from spinal arachnoiditis. Claimant states, "the objective medical record establishes that he actually may have arachnoiditis which meets Listing 1.04(B). However, no physician was asked to address this point after the record was developed." (Plaintiff's Opening Brief ("Pl.'s Opening Br.") 14.)

In relevant part, Listing 1.04B itself states that spinal arachnoiditis is "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or

---

[1] If Claimant disagreed with one or more of Judge Hogan's findings and conclusions, Claimant's remedy was to file an appeal with the Ninth Circuit Court of Appeals to obtain reversal of Judge Hogan's determinations, not to urge this court to change those determinations. To this extent, the court agrees with Defendant that the law of the case doctrine applies and nothing in the record warrants departure from that doctrine here. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 833-34 (9th Cir. 1982) (The law of the case rule ordinarily precludes re-examination of issues previously decided by the same court in the same case, and the court's discretion to review previous decisions "should be exercised sparingly.").

posture more than once every 2 hours." 20 C.F.R. Pt. 404, Subpt. P, Section1.04. As to documentation of this impairment, Section 1.00K gives additional guidance:

> the cause of spinal arachnoiditis is not always clear .... Diagnosis must be confirmed at the time of surgery by gross description, microscopic examination of biopsied tissue, or by findings on appropriate medically acceptable imaging. Arachnoiditis is sometimes used as a diagnosis when such a diagnosis is unsupported by clinical or laboratory findings. Therefore, care must be taken to ensure the diagnosis is documented as described in 1.04B. Individuals with arachnoiditis, particularly when it involves the lumbrosacral spine, are generally unable to sustain any given position or posture for more than a short period of time due to pain.

20 C.F.R. Pt. 404, Subpt. P, Section1.00K. Claimant has failed to produce diagnostic evidence sufficient to support this listing. The medical imaging and associated findings in the record do not establish the existence of spinal arachnoiditis. *See* Tr. 346 (MRI scan analyzed and no finding of spinal arachnoiditis); *see also* Tr. 379 (CT scan analyzed and no finding of spinal arachnoiditis). Therefore, ALJ Jones's conclusion was consistent with the requirements of Listing 1.04.

Claimant also argued that the ALJ failed to consider the combination of his physical and mental impairments in determining that Claimant did not meet this listing. Claimant cites *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990) for the proposition that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." In *Marcia*, the ALJ's finding on equivalence was, in its entirety, that "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal," the listing in question. 900 F.2d at 176. In contrast, here ALJ Jones adequately described his reasons for finding the Claimant did not meet the listing's requirements.

In his opinion, ALJ Jones first noted that Claimant "acknowledg[ed] his back disorder does not meet the requirements of Listing 1.04," but claimed that his combined impairments met Listing 1.04(B). Tr. 786. ALJ Jones reasoned that, based on "[t]he unreliability of [Claimant's] report regarding his symptoms and his documented activities of daily living," Claimant's combined impairments do not meet the listing. ALJ Jones then referred to the RFC section, wherein he explained his reasoning as to Claimant's credibility. Based on these facts, ALJ Jones ascribed only "mild depression and some back pain," to Claimant and found that, taken together, they were insufficient to meet the listing. Accordingly, the ALJ's finding that Claimant did not meet or equal the requirements of Listing 1.04B should be upheld.

2.  Dr. Carvalho

Claimant raises his objections to ALJ Atkins's treatment of Dr. Carvalho's opinion "to preserve his appeal rights." (Pl.'s Opening Br. 15.) This argument was raised in the prior civil action only and need not be addressed here.[2]

3.  Claimant Credibility

As Claimant notes, ALJ Jones revisited the issue of Claimant's credibility. Overall, ALJ Jones did not find Claimant credible "in his report of symptoms." Tr. 787. ALJ Jones cited "a uniformity of medical opinion finding a significant disparity between [Claimant's] subjective complaints and objective test or examination findings" as the primary reason he discounted Claimant's credibility. *Id.* ALJ Jones cited the reports of three physicians, Drs. Jacobs, Carvalho, and Weinstein, who each "acknowledge[d] the absence of a medical basis for the extent of

---

[2] The court reiterates its law of the case analysis contained in footnote 1. Whether Claimant in fact has preserved his appeal rights on this and other issues decided by Judge Hogan but not appealed by Claimant is a determination for the Court of Appeals.

11

[Claimant's] stated symptoms . . . ." *Id.*

In his treatment notes, Dr. Jacobs stated that "it is clear that there is a discrepancy between his current level of function and the objective findings." Tr. 315. The ALJ wrote: "Dr. Jacob's [sic] opinion is primarily based on [Claimant's] statements regarding his symptoms. Consequently, Dr. Jacob's [sic] opinion is not persuasive to the extent that he heavily relies upon [Claimant's] report of back symptoms. In sum, Dr. Jacob's [sic] evaluation of [Claimant] is entitled to no greater evidentiary weight than [Claimant's] statements upon which his opinion is based." Tr. 787. Dr. Carvalho wrote: "[Claimant's] subjective symptoms far outweighed [the assessment's] objective findings." Tr. 274. Dr. Weinstein observed: "There are no objective findings on neurospinal examination to suggest spinal cord, cauda equina, or nerve root compression with reference to his lower extremities. His complaints are subjective only." Tr. 346. ALJ Jones reasonably concluded that Claimant's subjective complaints were not supported by the objective record.

In addition, ALJ Jones provided additional reasons for questioning Claimant's credibility. In particular, ALJ Jones found Claimant's description of the source of his injury variable and unconvincing. In his 2004 hearing before ALJ Atkins, Claimant testified that he was injured in three separate explosions while serving in Vietnam. First, he testified that an explosion blew him through a wall. Tr. 852. Next, he testified that "an incoming round blew [him] into a bunker wall." *Id.* On both occasions, Claimant stated that there was not blood and that he was not treated, except for "Darvons[,] hot water, [and] pads." Tr. 853. Claimant further testified that he was involved in a mortar attack while riding as a passenger in a jeep, that "threw him back into the jeep on the ground." Tr. 854. Again, Claimant received no treatment. *Id.* As ALJ Jones noted, elsewhere in the record Claimant characterizes the source of his injury in different ways: he was "thrown against

12

[a] wall of a bunker in Vietnam" and "an explosion occurred nearby and he was thrown up against a truck." Tr. 311, 313. ALJ Jones also cited Dr. Kruger's evaluation, wherein Claimant never mentioned the injuries he sustained in Vietnam, though he did discuss the overall experience, including a honorable discharge related to contracting typhoid. Tr. 277. Claimant also mentioned that he was involved in "some combat, but not sustained combat." *Id.* (internal quotation marks omitted). The ALJ permissibly found that Claimant's inconsistent representations regarding his injuries in Vietnam undermined his credibility.

Next, ALJ Jones cited certain of Claimant's reported activities as evidence that his stated limitations were not credible. The activities included: going to Central Oregon and overdoing it, going fishing, driving to Los Angeles, hammering nails, and walking extensively, among other things. Tr. 750, 771, 720, 739. The court concludes that ALJ Jones's credibility analysis was based on substantial evidence in the record as a whole. *See Ryan v. Commissioner*, 2008 U.S. App. LEXIS 12795 (9th Cir. Dec. 5, 2007). The subjectivity of Claimant's pain symptoms, coupled with his inability to establish an objective basis for this pain, as well as his inconsistent stories and his description of activities that conflict with his alleged limitations, are sufficient to provide a foundation for ALJ Jones's credibility determination.

Claimant argues that where the subjective complaints and objective evidence differ, "an agency adjudicator is required to assess the credibility of the claimant's allegations." (Pl's Opening Br. 21.) The Ninth Circuit held that "[i]n deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of [the claimant's] symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage of analysis, of

13

the *Cotton* test, "imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Id.* at 1282 (emphasis in original). Here, Claimant did produce an objective basis for back pain and the combination of Claimant's impairments could reasonably result in "some degree of symptom." *Id.*

However, Claimant cannot satisfy the second stage of analysis. At the second stage, the ALJ is permitted to reject a claimant's testimony about the severity of her symptoms if there is either affirmative evidence that claimant is malingering or if the ALJ provided clear and convincing reasons for doing so. *Id.* at 1283-84. Here, ALJ Jones gave several reasons why he found Claimant less than credible. For one, three physicians that examined or treated Claimant specifically noted that the alleged symptoms were inconsistent with the objective evidence. Further, Claimant's testimony and medical reports contain varying reports of specific incidents and participation in activities at odds with Claimant's alleged symptoms. The ALJ rejected Claimant's testimony as not credible based on specific, convincing reasons supported by the record, as required by Ninth Circuit precedent.

Finally, Claimant argues that because the ALJ improperly discounted Claimant's credibility, the testimony should be credited as a matter of law and the case should be remanded for an award of benefits. Because the ALJ's credibility determination was proper, the court need not address these arguments.

4.  Claimant's Combined Impairments

Claimant again argues that the ALJ failed to consider the combination of his impairments,

both severe and not severe, in evaluating whether his condition met a listing. This argument already has been addressed by the court in the section titled "Listing 1.04B," and that analysis is incorporated here for purposes of this argument.

5.  Psychological Basis for Pain

Claimant argues that ALJ Jones failed to take into account the psychological basis for the degree of Claimant's pain. In doing so, the ALJ "ignored the mandate set forth in footnote 3 of SSR 96-07p." (Pl.'s Opening Br. 22). Footnote 3 states: "The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists, and the individual alleges pain or other symptoms, but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms." SSR 96-7p n.3. However, the ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).

Here, the record as to Claimant's mental impairments is not ambiguous and is extensively developed. Claimant has been evaluated by several mental health professionals: Dr. Smith, a psychiatrist, on May 20, 1996; Dr. Kruger, a clinical psychologist, on November 29, 1996; and Dr. Green, a counseling psychologist, beginning on August 15, 1994. Tr. 225, 276, 373. Furthermore, four ALJ decisions and two opinions by the district court have further illuminated the record. Claimant fails to establish that the record of his mental impairments is inadequate, that record development would clarify ambiguities, or how such clarification would undermine the ALJ's finding. Based on the record evidence before him, ALJ Jones stated that "[t]he unreliability of

[Claimant's] report regarding his symptoms and his documented activities of daily living are detailed in the [RFC] section of this decision. Suffice it to say, when [Claimant's] mild depression and some back pain are taken into consideration, the claimant's impairment does not equal Listing 1.04 or any of its subsections." Tr. 786. Therefore, ALJ properly considered the psychological basis for Claimant's pain.

6.  Physical Capacities Evaluation by Mr. Christensen

Claimant correctly points out that ALJ Jones did not address the findings of Mr. Christensen, a chiropractor. However, this is not reversible error. The scope of remand left the ALJ "free to reconsider any other determinations," but did not require a review of the entire factual record. Tr. 808. Therefore, the ALJ's failure to address the findings of each and every practitioner who examined Claimant is not error for purposes of the remand. Even so, Mr. Christensen's findings are at odds with the findings of Claimant's treating and examining physicians, which are entitled to controlling weight. *See Holland v. Apfel*, 1999 U.S. App. LEXIS 20358 (9th Cir. Aug. 25, 1999) ("a chiropractor's opinion is not an acceptable medical source for evidence of impairment and should not be given the same weight as a physician's opinion . . . ."). Where the two opinions conflict, a physician's opinion supercedes that of a chiropractor. Therefore, even if the ALJ erred in not considering Mr. Christensen's finding, that error was harmless because the medical findings controverted Mr. Christensen's findings, and a decision of the ALJ will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

7.  Physicians' Opinions Rejected by ALJ

This issue again implicates the scope of Judge Hogan's remand. ALJ Jones was free to reconsider *any* determinations but was not required to do so. The ALJ reconsidered Claimant's RFC

and, in doing so, "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . and opinion evidence . . . . As directed by the District Court, particular focus was given to the medical opinions of Drs. Gritzka and Jacob[s]." Tr. 787. This is consistent with the scope of the remand issued by Judge Hogan. That the ALJ did not explicitly revisit the opinion of each and every health practitioner visited by Claimant during the relevant period is not inconsistent with Judge Hogan's remand order, which did not require the ALJ to revisit of all medical opinions in the record if he elected to revisit any of them. Even so, the court will treat them each in turn.

Claimant contends that the opinion of Dr. Green was improperly ignored by ALJ Jones. Dr. Green is a counseling psychologist who treated claimant beginning in August of 1994. In his evaulation, Dr. Green wrote, "In my opinion, the veteran is not currently reasonably feasible to participate in vocational rehabilitation training program." Tr. 375. However, he based this conclusion on Dr. Jacobs's stated limitations, which were rejected by ALJ Jones because they were based solely on Claimant's subjective testimony. Tr. 373. Therefore, it was reasonable for the ALJ to also discount the opinion of Dr. Green.

Next, Claimant contends that ALJ Jones improperly ignored the conclusions of Dr. Kruger, a clinical psychologist employed by the Commission. Dr. Kruger, an examining physician, stated that his evaluation was "based on this examiner's interview with Mr. Paulson." Tr. 276. Again, this implicates Claimant's credibility, which the ALJ found unreliable regarding Claimant's subjective complaints. For this reason, the ALJ did not err to the extent that he ignored Dr. Kruger's conclusions when evaluating Claimant's alleged disability.

Claimant also asserts that the ALJ improperly rejected the opinion of Dr. Jacobs as to

17

Claimant's work-related restrictions. However, as stated above in the section entitled "ALJ's Findings," the ALJ rejected Dr. Jacobs's ultimate conclusions for two reasons. First, Dr. Jacobs's treatment notes contradicted the conclusion he expressed in his March 8, 1995, letter. Tr. 306. Second, Dr. Jacobs, like other of Claimant's doctors, concluded that Claimant's subjective complaints were inconsistent with the objective evidence. Tr. 315. Therefore, ALJ Jones gave clear and convincing reasons, supported by substantial evidence in the record, to reject Dr. Jacobs's conclusions as to Claimant's work restrictions. ALJ Jones did not err in this determination.

Finally, Claimant argues that ALJ Jones did not give sufficient reasons to reject the analysis of Dr. Gritzka. However, ALJ Jones stated that because Dr. Gritzka was neither a treating nor examining physician, his opinion was superceded by those of Claimant's treating and examining physicians. He wrote: "The non-examining and non-treating opinion of [Claimant's] restrictions and ability to work offered by Dr. Gritzka is certainly an insufficient reason to reject opinions of those physicians who actually treated or examined [Claimant] during the relevant period . . . ." Tr. 787-88. ALJ Jones gave clear and convincing reasons to reject Dr. Gritzka's opinion and therefore did not err.

8.   The Hypothetical

Claimant argues that the hypothetical submitted to the VE was faulty because it failed to include Claimant's subjective complaints and failed to include the limitations assessed by several of Claimant's doctors. This court has concluded that the ALJ did not err in his analysis of Claimant's credibility or in evaluating the opinions of various health practitioners. Therefore, the hypothetical question presented to the VE was proper and included all of Claimant's relevant limitations.

18

9.  Eroded Occupational Base

Claimant argues that, where a claimant more than fifty years old lacks transferrable skills and whose capacity is for less than the full range of light work, the ALJ must address "whether the occupational base remaining to the claimant is closer to the occupational base of the sedentary grid rule, or whether the remaining occupational base is closer to that of the light grid rule." (Pl's Opening Br. 34) (underline in original). This argument relies on a finding that the VE's testimony was unreliable and, thus, the ALJ concluded erroneously that Claimant had transferrable skills. *See* Pl.'s Opening Br. 34 n.5 ("As noted above, although the ALJ found there are transferable skills . . . there are not. The VE's testimony is both unreliable and contrary to the agency's rulings."). However, because both the RFC and hypothetical were proper, the VE's testimony was reliable and in line with agency rulings. Accordingly, there is no basis for a finding of an eroded occupation base.

*Conclusion*

For the reasons stated, the decision of the Commissioner denying Claimant's application should be AFFIRMED.

//
//
//
//

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than July 25, 2008. If no objections are filed, review

19

of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 11th day of July, 2008.

                                                    JOHN V. ACOSTA
                                            United States Magistrate Judge